Filed 3/11/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| LORI FOWLER et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF LAFAYETTE,<br><br>     Defendant and Respondent. | A156525<br><br>(Contra Costa County<br>Super. Ct. No. MSN162322)<br><br>**ORDER MODIFYING OPINION;<br>AND DENYING PETITION FOR<br>REHEARING<br>[NO CHANGE IN JUDGMENT]** |

THE COURT:

Appellants' petition for rehearing, filed February 25, 2020, is denied.

It is ordered that the opinion filed February 10, 2020, be modified as follows:

1.     On page 2 of the opinion, revise the third sentence of the first paragraph to read:

In March 2015, they applied through their architect for approval of the project.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.D, II, and III of the Discussion section.

1

2. On page 14 of the opinion: Delete the last sentence of footnote 3 (carried over from page 13), beginning "We note that . . ."

3. On page 14, replace the first full sentence of the second paragraph with: "Relatedly, plaintiffs' claim for nullification fails because they have not shown prejudice from the Brown Act violation here."

4. On page 15, after the cite to *Galbiso*, begin a new paragraph that replaces the last sentence of the first paragraph on page 15:

Plaintiffs also argue that the language of Section 54960.1 forecloses a prejudice requirement, but we disagree. The statute sets forth five circumstances in which a challenged action "shall not be determined to be null and void" (section 54960.1, subd. (d)), but this language does not imply the converse—that a challenged action *must* be set aside, even without a showing of prejudice, unless one of these enumerated circumstances prevails. Had the Legislature intended that result, we assume it would have chosen different language. (See, e.g., section 54957 [action taken in violation of statute "shall be null and void"]; *Bell v. Vista Unified School Dist.* (82 Cal.App.4th 672, 682). Plaintiffs thus give us no reason to repudiate the rule that an action will not be invalidated for violation of the Brown Act absent a showing of prejudice.

5. On page 16 of the opinion, replace the first sentence of the first full paragraph and the initial words of second sentence of the same paragraph with the following:

In an effort to show prejudice, plaintiffs argue that had they known the litigation threat was being discussed in closed session, they could have distinguished the issues in this matter from those in another matter the City Council was considering in the closed session,

in which Bowie also represented the applicant.  But there is nothing to suggest that the City Council did not understand or differentiate the issues before it in the two matters, and we will not indulge in such speculation.  And even if appellants had known that the City Council was discussing Bowie's litigation threats, they would not have been privy to, or in a position to rebut, comments made in closed session.

Plaintiffs also argue that they might have achieved . . .

6.      On page 17 of the opinion, replace the first full paragraph with the following:

Here, where the challenged action was taken in open session after the merits and demerits of the project had been exhaustively debated in multiple City Council meetings, and where there is no basis to assume the closed sessions were themselves improper or that the City Council failed to understand the issues raised in them, we see no basis for inferring prejudice from the City's failure to disclose in the meeting packet the applicant's litigation threat.

7.      On page 25 of the opinion, after the words, "The judgment is affirmed," add:

The parties shall bear their own costs on appeal.


There is no change in the judgment.



Dated:_____          _____
                                                         POLLAK, P.J.


*Fowler v. City of Lafayette* (A156525)


3

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Edward G. Weil |
| Counsel for Appellants: | Larson O'Brien LLP, Scott A. Sommer; and Gary S. Garfinkle |
| Counsel for Respondent: | Keker, Van Nest & Peters LLP, Benedict Y. Hur, Justina Sessions, and Neha Mehta |

Filed 2/10/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LORI FOWLER et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>CITY OF LAFAYETTE,<br><br>        Defendant and Respondent. | A156525<br><br>(Contra Costa County<br>Super. Ct. No. MSN162322) |

The City of Lafayette (the City) approved an application to build a tennis cabaña on a residential property. Lori Fowler, Scott and Jeanne Sommer, Val and Rob Davidson, and Avon and George Wilson (collectively, plaintiffs), all residents of the City, brought this action challenging the approval on the grounds that the City improperly considered the application in closed sessions in violation of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.)[1] and violated their right to a fair hearing. They appeal after the trial court ruled against them. In the published portion of the opinion, we agree with plaintiffs that the City violated the Brown Act but conclude there was no prejudice. We also reject plaintiffs' other contentions, and shall affirm the judgment.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.D, II, and III of the Discussion section.

[1] All undesignated statutory references are to the Government Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The owners of the property, Michael and Diane Archer (the applicants), sought to build what they called a tennis cabaña (the project) next to a tennis court on their 2.38-acre property. As initially proposed, the 1,199-square-foot cabaña would have included a pavilion with a kitchen for entertaining and a guest room with a full bathroom. In March 2015, they applied for approval of the project. Through the course of the design review, the applicants made changes that eliminated the need for a setback variance and removed the kitchen from the proposed building. The City's Design Review Commission (DRC) approved the project, with conditions of approval requiring the applicants to record a landscape maintenance agreement and a deed restriction preventing the cabaña from being used as a secondary dwelling unit.

Plaintiffs are neighbors of the applicants who objected that the tennis cabaña was inconsistent with the neighborhood and too close to an adjacent home, such that it would subject the occupants to noise and loss of privacy. They appealed the DRC's action to the City's Planning Commission, asserting a number of objections to the project: that it was an illegal second unit; that it violated a landscape condition of approval imposed in 1990, when the tennis court was approved; that the building was too large, too close to neighboring residences, and inconsistent with the City's general plan and municipal code; and that the notices of DRC hearings were inadequate and violated the Brown Act. A supporting letter also raised the concern that the applicants had an unfair advantage in the review process because their architect was a member of the Planning Commission.

The City's Planning Commission considered the matter at four meetings between December 2015 and May 2016. During the course of those

meetings, the applicants made additional changes to the project, shaving its size to 1,100 square feet and decreasing its height, while increasing the distance from the cabaña to a neighboring project, and improving landscaping.  The Planning Commission approved the project subject to conditions of approval including the landscape agreement and the prohibition on use as a secondary dwelling unit.

Plaintiffs appealed the matter to the City Council.  They argued that the project violated the 1990 landscape condition of approval; that it improperly expanded the use of the tennis court, which they asserted was a nonconforming use under the City's ordinances; that it was an illegal second unit; that the restrictions on use would not bind future owners of the property; and that consideration should be given to locating the cabaña on another portion of the applicants' property, farther from neighbors' homes.

The City Council considered the appeal at four meetings:  July 11, July 25, September 26, and October 11, 2016.  At the final meeting, the City Council denied the appeal and upheld the Planning Commission's approval of the application, subject to conditions, on a four-to-one vote.

While approval was pending, the applicants' attorney threatened to sue the City if it denied the project, and the City Council discussed the threat of litigation during closed sessions held before the July 25, September 26, and October 11, 2016 meetings.  An entry in the "Notes" field in the City's "Application Database" for the project—between notations indicating that the appeal to the City Council had been received and that the appeal was scheduled for a July 11 hearing—states:  "On multiple occasions now, on the phone D. Bowie [David Bowie, the applicant's counsel] indicated he would take the matter to court if the City denied the project.  M. Canales [Megan

3

Canales, an assistant planner who worked on the application] informed M. Subramanian [Mala Subramanian, City Attorney] of litigation threat."

Subramanian notified the City Council of the litigation threat orally, rather than in written form, in the July 25, 2016 closed session. That a threat of litigation had been made with respect to this specific project was not noted in the agenda for any of the public meetings, and there was no mention of it in any of the packets of information—including staff reports and agenda attachments—that were made available to the public for inspection in city offices and on-line before the meetings. The agendas simply record that the City Council would confer with legal counsel in closed session about one case of anticipated litigation, without identifying the case. In order to see the notation regarding the threat of litigation in this matter, a member of the public would have to visit the City's "planning counter," speak with a planner, and ask to see the project's "notes field." The computer network that included that information was password-protected, and there was no indication the notes in the project's application database were printed out until after the City Council reached its decision.

Plaintiffs did not learn that Bowie had threatened litigation or that the City Council had discussed the matter in closed sessions until November 2016, after the project had been approved.

Plaintiffs brought a petition for writ of mandate (Code Civ. Proc., § 1085) and complaint for injunctive and declaratory relief challenging the City's decision. The operative second amended petition alleges the City violated the Brown Act by discussing the application in closed hearings, and that plaintiffs were deprived of their right to a fair hearing.

The trial court rejected all of plaintiffs' claims, denied the petition, and entered judgment for the City.

4

## DISCUSSION

### I. Brown Act Violation

#### *A. General Standards*

Plaintiffs contend the City violated the Brown Act by failing to announce or make available for public inspection Bowie's statement threatening litigation and by conducting unauthorized and overbroad discussions in closed sessions. Where the facts are undisputed, our review of this challenge is de novo. (*San Diegans for Open Government v. City of Oceanside* (2016) 4 Cal.App.5th 637, 642; *Castaic Lake Water Agency v. Newhall County Water Dist.* (2015) 238 Cal.App.4th 1196, 1204.) However, to the extent the trial court drew factual inferences, we defer to those inferences if they are supported by substantial evidence. (*Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178–179.)

The Brown Act requires most meetings of a local agency's legislative body to be open and public. (§ 54953, subd. (a); *Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313, 1321.) It "is intended to ensure the public's right to attend the meetings of public agencies. [Citation.] To achieve this aim, the Act requires, inter alia, that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda. [Citations.] The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation by public bodies." (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1511.) The Brown Act is " 'construed liberally so as to accomplish its purpose.' " (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 525 (*Olson*).)

5

### B. Closed Sessions Concerning Pending Litigation

One of the exceptions to the Brown Act's open meeting requirements allows closed sessions for an agency to "confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation." (§ 54956.9, subd. (a).) Resolution of the question of whether the City Council gave adequate notice that it was discussing the project in closed session requires a close examination of the statutory provisions regarding pending litigation.

Litigation is considered pending when, inter alia, "[a] point has been reached where, in the opinion of the legislative body of the local agency on the advice of its legal counsel, based on existing facts and circumstances, there is a significant exposure to litigation against the local agency." (§ 54956.9, subd. (d)(2).) Subdivision (e) of the same statute limits "existing facts and circumstances" in this context to five scenarios, two of which are pertinent to our inquiry: "(2) Facts and circumstances, including, but not limited to, an accident, disaster, incident, or transactional occurrence that might result in litigation against the agency and that are known to a potential plaintiff or plaintiffs, *which facts or circumstances shall be publicly stated on the agenda or announced,*" and "(5) A statement threatening litigation made by a person outside an open and public meeting on a specific matter within the responsibility of the legislative body so long as the official or employee of the local agency receiving knowledge of the threat makes a contemporaneous or other record of the statement prior to the meeting, *which record shall be available for public inspection pursuant to Section 54957.5 . . . .*" (§ 54956.9, subd. (e)(2) & (5), italics added.)

6

The first question we must decide is whether subdivision (e)(2) or (e)(5) of section 54956.9 applies to this case. This question is significant because of the different requirements for notifying the public of a litigation threat: there is no dispute that the threat was not publicly stated on the record, as would be required if subdivision (e)(2) governed; but the parties dispute vigorously whether the City's actions in including the threat in the project's Notes field satisfied subdivision (e)(5)'s requirement that a record of a litigation threat be made available for public inspection pursuant to section 54957.5. Plaintiffs contend that the threat of litigation fell not only within subdivision (e)(5) of section 54956.9, but *also* within subdivision (e)(2)'s broad enumeration of "[f]acts and circumstances, including, *but not limited to*, . . . [a] transactional occurrence that might result in litigation . . . ," and that the City was therefore obligated to publicize when it would be discussing potential litigation over the project.

On this point, the City has the better of the argument. On its face, section 54956.9, subdivision (e)(2) appears to apply to events that might themselves give rise to litigation, such as "an accident" or "disaster," or a "transactional occurrence that might result in litigation." But even assuming this language could be stretched to include a threat of litigation based on a pending application, we must bear in mind the well-established rule of statutory construction that " ' "[a] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." ' " (*Miller v. Superior Court* (1999) 21 Cal.4th 883, 895; accord, *Elliott v. Workers' Comp. Appeals. Bd.* (2010) 182 Cal.App.4th 355, 365.) Subdivision (e)(5) of section 54956.9 specifically addresses a public agency's obligations when a person has

7

threatened litigation outside a public meeting.  Like the trial court, we conclude this provision, and not subdivision (e)(2), applies here.

We next ask whether the City complied with its obligation under section 54956.9, subdivision (e)(5) to "make[] a contemporaneous or other record of the statement prior to the meeting, which record shall be available for public inspection pursuant to section 54957.5."  Plaintiffs contend the record of the threat was not created until November 2016—after the project was approved—pointing out that the printed copy of the Notes field from the "Application Database" for the project (referred to by the parties as the "Bowie Statement") states at the bottom, "Copied from Database on 11/3/16 by M. Canales for S. Sommer," and the metadata for the entry does not reflect an earlier date.  The trial court concluded, however, that the November 3, 2016 date merely reflects the date the Notes field was printed in response to a request by one of the plaintiffs, not the time each item in the Notes field was entered.  This conclusion is reasonable, and the location of the Bowie statement in the database—*between* notes of the appeal to the City Council and of the scheduled July 11, 2016 date for the appeal to be heard— suggests the note was most likely entered before July 11, 2016.

### C. Availability of Agendas and Other Writings

So far, we have agreed with the trial court.  We depart from it, however, on whether the City met its duty to make the record of the statement threatening litigation "available for public inspection *pursuant to Section 54957.5.*"  (§ 54956.9, subd. (e)(5), italics added.)  Section 54957.5 directs public agencies to disclose agendas of public meetings and other writings that are distributed to members of a local agency in connection with open meetings.  Specifically, subdivision (a) dictates that such agendas and writings are disclosable public records that must be made available on

8

request without delay. And subdivision (b) requires that, if the writing is distributed less than 72 hours before the meeting, it must be made available at a location specified in the agenda or be posted on the agency's web site.[2]

The City argues it complied with these provisions by making the Bowie statement available for public inspection when it entered it in the Notes section of the Application Database, which any member of the public could inspect by going to the Planning Department and asking to see the project notes. The City contends its obligation was limited to making the Bowie statement available for public inspection at city offices, not to *distributing* it in the agenda packet where, as here, it was not distributed in written form to the City Council.

This argument is unconvincing. Where litigation has been threatened outside a public meeting, it may be discussed in closed session under section 54956.9, subdivision (e)(5) *only* if a record of the threat is made before the meeting, which record must be made available for public inspection *pursuant*

---

[2] Section 54957.5, subdivision (a), provides that "agendas of public meetings and any other writings, when distributed to all, or a majority of all, of the members of a legislative body of a local agency by any person in connection with a matter subject to discussion or consideration at an open meeting of the body, are disclosable public records . . . and shall be made available upon request without delay."

Subdivision (b)(1) provides: "If a writing that is a public record under subdivision (a), and that relates to an agenda item for an open session of a regular meeting of the legislative body of a local agency, is distributed less than 72 hours prior to that meeting, the writing shall be made available for public inspection pursuant to paragraph (2) at the time the writing is distributed to all, or a majority of all, of the members of the body."

Under subdivision (b)(2), "A local agency shall make any writing described in paragraph (1) available for public inspection at a public office or location that the agency shall designate for this purpose. Each local agency shall list the address of this office or location on the agendas for all meetings of the legislative body of that agency. The local agency also may post the writing on the local agency's Internet Web site in a position and manner that makes it clear that the writing relates to an agenda item for an upcoming meeting."

*to section 54957.5.* (§ 54956.9, subd. (e)(5).) The clear import of section 54957.5 is that agendas and other writings that the legislative body receives in connection with a meeting should be available to the public upon request. Mostly, these are documents relating to agenda items for the open session of the meeting (e.g., § 54957.5, subd. (b)(1)), but section 54956.9, subdivision (e)(5) requires the same for documented threats associated with an agenda item for the closed session as well. The only reasonable inference is that a record of a litigation threat to be discussed in closed session must be included in the agenda packet made available upon request before a meeting. (See *Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1596 & fn. 5 [§ 54957.5 requires agenda packet to be made available to the public].)

Section 54957.5 does not explicitly address the situation we face here, in which an electronic record of the litigation threat was made but *not* distributed in written form to the legislative body. The City appears to take the position it can avoid its responsibility to include a record of the threat in the agenda packet by the simple expedient of conveying the threat to the legislative body orally, rather than in writing. But the statutory scheme does not allow an agency to thwart its duty of public disclosure in this manner. Read together, sections 54956.9 and 54757.5 contemplate that a litigation threat will be reduced to writing and included in the agenda materials available to the public upon request. The threat here was entered in the City's computer system, and it was conveyed to the City Council as the basis for a closed session. Under sections 54956.9, subdivision (e)(5) and 54957.5, a record of the threat should have been included in the agenda packet made available at City offices.

The City disputes this conclusion, contending the notation regarding the threat was available for inspection in City offices upon request. But this availability is illusory if an interested person would not know the question to ask. We reiterate that the Brown Act is intended to "facilitate public participation in all phases of local government decisionmaking" (*Golightly v. Molina, supra,* 229 Cal.App.4th at p. 1511), and that we must construe it *liberally* to accomplish its purpose (*Olson, supra,* 33 Cal.App.5th at p. 525). Members of the public are entitled to rely on the agenda and packet made available upon request (see § 54957.5, subd. (a)), and the City has drawn our attention to no authority suggesting an interested citizen must, in addition, go to the planning counter, speak to a planner, and ask the planner to pull up the Notes field of an application file in a password-protected computer system to determine whether the legislative body has received a litigation threat that might properly be the basis of a closed session.

The City also suggests that it was not required to make the litigation threat available as part of the agenda materials because the threat related only to the closed session, not to an item discussed in open session. (§ 54957.5, subds. (a) & (b).) This point fails. First, a threat to sue if an agency does not approve a project being considered at an open session may reasonably be understood to relate to or be made in connection with the open session's agenda item. Second, the express language of section 54956.9, subdivision (e)(5) requires a record of the threat to be made "prior to the meeting" where it will be discussed and then made "available for public inspection pursuant to Section 54957.5." That the record is not *otherwise* subject to disclosure under section 54957.5 is immaterial. Read together, sections 54956.9, subdivision (e)(5) and 54957.5 require public agencies to

11

include with the agenda materials litigation threats to be discussed in closed session.

### D. Other Brown Act Challenges

Plaintiffs' other substantive Brown Act challenges are unpersuasive, and, in light of our conclusion that the City violated the Brown Act in its treatment of the litigation threat, we will discuss them only briefly.

Plaintiffs argue the evidence does not show Bowie threatened litigation in a manner that would justify a closed session, a conclusion they reach only by focusing on other statements Bowie made. Greg Wolff, an assistant planning director, testified that he had spoken with Bowie many times, and that Bowie had "hint[ed] or insinuate[ed]" he would take the matter to court if the City denied the application. Rather than saying directly that he would sue the City, according to Wolff, Bowie said he would "do whatever it takes to [e]nsure his client's rights are respected." But it was Canales, the assistant planner who worked on the application, and not Wolff, that reported Bowie had threatened litigation on multiple phone calls and informed the City Attorney of the threat, and Bowie may have taken a more aggressive line with her. In any event, even if the only words at issue were those reported by Wolff, the City and its counsel could reasonably construe them as a threat of litigation. (See *Sutter Sensible Planning, Inc. v. Board of Supervisors* (1981) 122 Cal.App.3d 813, 824 [board could properly hold closed session to receive legal advice regarding implied threat of litigation].)

Plaintiffs also argue that the closed session discussions were impermissibly broad. They point to the declaration of Guy Atwood, who stated that he spoke regularly with councilmember Mark Mitchell about governmental affairs in the City. Mitchell told Atwood the City Council would be scheduling a closed session on the threat of litigation that Bowie

12

had made, and then in October and November of 2016, told Atwood the City Council had discussed the land use project in the closed sessions, and that councilmembers had asked questions about the project and were given answers by the City Attorney and planning staff. Mitchell did not report to Atwood having discussed the litigation threat specifically. As the trial court found, this declaration does not show the City's discussions of the project were broader than necessary to consider the strength and merits of any threatened litigation. (See *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1030 [Brown Act accommodates "the practical need public agencies have for confidentiality when attempting to make rational decisions about the legal strength of arguments asserted by an actual or probable adversary"].)

Plaintiffs also contend that public disclosure of Bowie's threat of litigation would not prejudice the City for purposes of section 54956.9, subdivision (a). To the extent plaintiff's argument is that the City was required to make the threat known to the public upon request, we agree, for the reasons we have already stated.

### E. Nullification of Agency Action

Our conclusion that the City violated the Brown Act does not end the matter. Section 54960.1 authorizes a court to find null and void an action taken in violation of specified portions of the Brown Act—sections 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5[3]—and plaintiffs urge that the project approval is null and void under this provision.

---

[3] These statutes involve the Brown Act's requirements for open meetings (§ 54953), posting agendas (§ 54954.2), closed session item descriptions (§ 54954.5), meetings regarding new or increased taxes or assessments (§ 54954.6), special meetings (§ 54956), and emergency meetings

We are not persuaded. Plaintiffs' complaint is that they were not informed that Bowie had threatened litigation before the City Council discussed the threat in closed session. But the action they seek to nullify is the approval of the cabaña, which occurred not in closed session, but in an open session that was properly noticed and at which the City Council considered the matter fully after hearing from all interested parties. Thus, this matter does not fall within the terms of section 54960.1, which authorizes nullification only of "an action taken . . . in violation of [the specified statutes.]" (§ 54960.1, subd. (a).)

Plaintiffs' claim for nullification fails for a second reason as well. We do not set aside an agency's action unless the appellants show the violation caused prejudice. (*Olson, supra*, 33 Cal.App.5th at p. 522; *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1410.) This rule has been consistently stated in cases construing the Brown Act and analogous law. (See *Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 670–671 (*Galbiso*) ["in light of the long history of this assessment dispute and litigation in which both parties were well aware of the other side's position and arguments, no prejudice is apparent"]; *Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547, 556 (*Cohan*) ["highly unlikely" more people would have attended hearing to support appellant's position if matter had been properly placed on agenda]; see also *North Pacifica LLC v. California Coastal Com.* (2008) 166 Cal.App.4th 1416, 1433–1434 [considering failure to comply with 10-day advance notice requirement of analogous Bagley-Keene Open Meeting Act, § 11120 et seq.].)

(§ 54956.5). We note that section 54956.9, subdivision (e)(5), which the City violated, is not among the statutes enumerated in section 54960.1.

14

Plaintiffs argue that the language in these cases is mere dictum and should be disregarded.  Not so.  The court in *Cohan* found a Brown Act violation, noted the requirement of prejudice to invalidate a decision, and explained the reasons that there was no showing of prejudice.  (*Cohan*, *supra*, 30 Cal.App.4th at p. 556.)  In *Galbiso*, the lack of prejudice was an alternate basis for the court's decision.  (*Galbiso*, *supra*, 182 Cal.App.4th at p. 670; see *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1996) 50 Cal.App.4th 1542, 1549 [where two independent reasons are given for decision, neither is considered mere dictum].)  In any case, California courts have consistently stated that a decision will not be invalidated for violation of the Brown Act absent a showing of prejudice, and plaintiffs give us no reason to repudiate this rule.

There has been no showing of prejudice here.  The application was thoroughly considered at four open meetings at which the City Council considered plaintiffs' appeal.  The minutes of the discussion at the July 11, 2016 meeting devote more than 20 pages, representing more than an hour and a half of meeting time, to this issue.  The minutes record there was a staff summary of the project; questions by the mayor and councilmembers and responses by staff and the City Attorney; comments by applicant Michael Archer and attorney Bowie in support of the project; extensive comments in opposition to the project by Lori Fowler and Scott Sommer, two of the plaintiffs; public comments by other neighbors opposed to the project; and discussion among the mayor and members of the City Council.  The discussion at the July 25, 2016 hearing covered more than 25 pages of the meeting's minutes and was again exhaustive, as were the discussions at the September 26 and October 11, 2016 hearings.  There is no reasonable argument that plaintiffs lacked a fair opportunity to present their case, that

15

the City failed to consider it fully, or that plaintiffs would have achieved a more favorable result if they had known the City Council was also considering the litigation threat in closed session.

In an effort to show prejudice, plaintiffs complain they were deprived of knowledge that the litigation threat was being discussed in closed session, but they suggest no particular manner in which they would have proceeded differently had they known of the threat. They also argue that they might have achieved a more favorable result from newly elected City Council members who took office a few weeks *after* the project was approved. But speculation about what future council members might have done if the matter had been delayed is irrelevant to whether plaintiffs were prejudiced by the Brown Act violation that actually occurred.

Plaintiffs argue that the rule that we reverse only for prejudicial Brown Act violations is strictly limited to minor technical violations, such as, for instance, a city council's action in " 'amending' " an agenda at a meeting to consider a new item. (*Cohan, supra*, 30 Cal.App.4th at p. 555.) But the surest way to distinguish what might be called minor or technical violations from violations that require us to nullify an official act is to examine whether a party has been prejudiced. (Compare *Cohan, supra*, 30 Cal.App.4th at p. 556, with *Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, 1260–1261 [failure to provide notice and public hearing when considering adoption of zoning ordinance not harmless as "mere minor technical defect," but deprived residents affected by ordinance of opportunity to have concerns and welfare considered].) Thus, *Horn v. County of Ventura* (1979) 24 Cal.3d 605 (*Horn*), on which plaintiffs rely, requires notice and a hearing to neighboring landowners only where a city's land use decisions "result in 'significant' or 'substantial' deprivations of property." (*Id*. at p. 616.)

16

Here, where there is no basis to conclude the closed sessions were themselves improper, where the merits and demerits of the project were exhaustively debated in multiple City Council meetings, and where there is no indication of how the plaintiffs would have proceeded differently if they had known of the threat, we see no basis for inferring even the possibility of prejudice from the City's failure to disclose in the meeting packet the applicant's litigation threat.

## II. Due Process Challenges

### A. Background

Plaintiffs contend they were deprived of their right to due process and a fair hearing. Their primary challenge here centers on the role of the applicant's architect, J. Allen Sayles, who was also a member of the City's Planning Commission, and, ex officio, a non-voting member of the DRC when these bodies considered the project. The application lists Sayles as the architect. When the DRC considered the application, Sayles recused himself and presented the project to the DRC. At the December 7, 2015 Planning Commission meeting, at which it heard plaintiffs' appeal from the DRC's approval of the project, Sayles recused himself from participating in the matter and left the Commission meeting for the remainder of the evening.

The City Attorney issued an advisory memorandum on May 10, 2016, regarding the conflicts of interest that might arise for architects who are members of the Planning Commission or the DRC. The memorandum explained that such an architect may prepare plans or drawings that will be subject to the commission's review and approval, but the architect may not appear before his or her own commission, or before another commission if the matter might be reviewed by the member's own commission. Thus, a member of the Planning Commission may not appear before the DRC because

17

the matter may be appealed to the Planning Commission. Furthermore, with certain exceptions, the member is not allowed to contact planning staff regarding a specific project. These restrictions apply equally to ex officio members of a commission.

In light of this opinion, Sayles resigned from the Planning Commission, effective May 17, 2016, explaining that his architectural office was small, he sometimes needed to represent his clients at the design review and town council levels, and he could "no longer serve on the planning commission and remain in compliance with these guidelines."

Scott Sommer, one of the plaintiffs who had by then appealed the matter to the City Council, sent a letter to the mayor and City Council on June 20, 2016, explaining that Sayles, while a sitting member of the Planning Commission, submitted applications for the cabaña, had multiple contacts with planning staff members regarding the project, and appeared personally before the DRC to present the applications. Sommer took the position that these actions violated the Political Reform Act of 1974 (§ 81000 et seq.), under which, in pertinent part, a public official may not "participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest." (§ 87100).

The City Attorney then sent a letter to the Fair Political Practices Commission (FPPC) asking for advice on whether the City Council could properly vote on a development project that it reviewed de novo if a planning commissioner with a conflict of interest had participated in a prior stage of the application. The FPPC responded that the Political Reform Act's conflict-of-interest provisions did not preclude a city council from deliberating and voting on a matter in these circumstances.

18

Sayles did not participate in and was not present at the hearings before the City Council.

Based on these facts, and on evidence said to show bias on the part of the City Attorney and City staff, plaintiffs contend they were deprived of their right to due process and a fair hearing before an unbiased decision maker. They seek a writ of mandate compelling the City to vacate the resolution approving the application (Code Civ. Proc., § 1085), as well as a declaration that the City violated their right to due process (Code Civ. Proc., § 1060).

### B. Discussion

Plaintiffs brought their causes of action for a writ of mandate under Code of Civil Procedure section 1085, which is "a method for compelling a public entity to perform a legal and usually ministerial duty." (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995.) To obtain writ relief under this provision, a party "must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593 (*County of San Diego*).)

"When a party seeks review of an administrative decision pursuant to Code of Civil Procedure section 1085, judicial review is limited to examining the agency proceedings to ascertain whether the agency's action has been arbitrary, capricious or lacking entirely in evidentiary support, or whether the agency failed to follow the proper procedure and give notices required by law." (*Ideal Boat & Camper Storage v. County of Alameda* (2012) 208 Cal.App.4th 301, 311.) In reviewing a trial court's decision in an action for

19

ordinary mandate, we review legal issues independently, but, to the extent facts are disputed, we review the trial court's findings for substantial evidence, viewing the evidence in the light most favorable to the prevailing party and resolving all conflicts in its favor. (*McIntyre v. Sonoma Valley Unified School Dist.* (2012) 206 Cal.App.4th 170, 179; *Munroe v. Los Angeles County Civil Service Com.* (2009) 173 Cal.App.4th 1295, 1301.)

Plaintiffs argue the City deprived them of due process when it considered evidence in closed hearings of which they had no notice and when the City Attorney and City staff members, who plaintiffs contend appeared biased in favor of the applicants as a result of Sayles's involvement, participated in the proceedings. As a result, they contend, they were deprived of their due process right to reasonable notice and an opportunity to be heard by an unbiased decision maker on a matter that affected their property interests. (See *Cohan*, *supra*, 30 Cal.App.4th at pp. 554–555; *Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 549; *Horn*, *supra*, 24 Cal.3d at p. 616; *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 (*Morongo*).) The trial court rejected these contentions, as do we.

First, the trial court found the evidence did not support an inference that the City Council improperly used the closed sessions to debate the merits of the project. We have already agreed with the trial court on this point. In addition, as the City points out, this claim is essentially that the City violated the Brown Act, which provides an adequate remedy. (See *County of San Diego*, *supra*, 164 Cal.App.4th at p. 593 [relief under Code Civ. Proc., § 1085 available only where there is no other plain, speedy, and adequate remedy].)

20

We are equally unpersuaded by plaintiffs' second contention that the proceedings were infected by the bias of staff members and the City Attorney. To prevail on a claim that a decision maker's bias violated the right to a fair hearing, a party must show " ' "an unacceptable probability of actual bias on the part of those who have actual decisionmaking power over their claims." ' [Citation.] A party seeking to show bias or prejudice on the part of an administrative decision maker is required to prove the same 'with concrete facts: " '[b]ias and prejudice are never implied and must be established by clear averments.' " ' " (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 483.) A "mere suggestion of bias is not sufficient to overcome the presumption of integrity and honesty." (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1236.)

This case comes far from meeting that standard. Plaintiffs argue that staff and the City Attorney allowed Sayles to "criminally violate the Political Reform Act" by advocating for this and other projects before the DRC and by meeting privately with City staff in support of the project; that they tried to "cover up" these violations by describing them incompletely to the City Council; that staff reports minimized the extent of a conflict between the project and the 1990 landscaping condition of approval; that staff and the City Attorney ignored or downplayed various problems with the application (e.g., the project's potential to become an illegal second unit through the later addition of kitchen appliances, the alleged fact that the tennis court by the proposed cabaña was a nonconforming use, and the possibility of an alternative location for the cabaña); that the City Attorney's office provided only a "sanitized" version of facts to the FPPC; and that the City failed to investigate the role of Sayles and staff on the application.

21

These claims all fail because they do not show " ' "an unacceptable probability of actual bias on the part of those who have actual decisionmaking power over their claims." ' " (*Nasha, supra*, 125 Cal.App.4th at p. 483.) The City Council, not staff members or the City Attorney, was the decision maker, and nothing shows the City Council was infected with bias. For that matter, as the trial court found, the evidence would not support a conclusion that members of the City's staff or its City Attorney were biased.

In that regard, this case is readily distinguishable from those upon which plaintiffs rely. They place greatest weight on *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81. The petitioners there filed a petition for a writ of administrate mandate challenging a city's denial of an application for renewal of a permit for an adult entertainment establishment. The hearing officer was assisted by an assistant city attorney who had represented the city in its initial denial of the permit renewal application and was also litigating a federal lawsuit brought by the petitioners against the city relating to its regulation of adult entertainment. (*Id.* at pp. 84–85.) Under these circumstances—in which the same person appeared both as an advocate of the city's position and as an advisor to a supposedly neutral decision maker—there was "a clear *appearance* of unfairness and bias" that supported a ruling that the petitioners' due process rights had been violated. (*Id.* at pp. 86, 94.) There are no similarly egregious facts here. No one on the City's staff, and no advisor to the City Council, advocated on behalf of the applicants, so there is no unacceptable probability that staff bias tainted the City Council's decision. And before the City Council took up the project, architect Sayles had resigned from the Planning Commission, and the City Council was informed about the reasons for his resignation and his involvement at earlier stages of the approval process.

The other cases upon which plaintiffs rely do not lead to a different result. In *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810, 812, 816, disapproved on another point in *Morongo, supra*, 45 Cal.4th at page 740, footnote 2, a deputy city attorney who represented the defendant city before a personnel board had also acted as counsel for the board, creating an appearance of bias and unfairness. In *Golden Day Schools, Inc. v. State Dept. of Education* (2000) 83 Cal.App.4th 695, 710, one of the members of the board deciding an administrative appeal had headed the agency that initially ruled against the petitioner and had been involved in making the original decision. In *Nasha, supra*, 125 Cal.App.4th at pages 476–477, 483–484, a member of the planning commission hearing an application for a project had written an article attacking the project. No similar facts indicating a blurring of the lines between advocate and decision maker, hostility to a project, or a predetermined decision appear here.

We accordingly reject plaintiffs' contention that they were deprived of their right to a fair hearing before an unbiased decision maker.

### C. Exclusion of Evidence

In a related challenge, plaintiffs contend the trial court erred in excluding evidence that Sayles and other commissioners had made illegal appearances on behalf of other clients in the preceding years, and that in 2008 the FPPC fined a DRC member for making a governmental decision regarding a development project in which he had a financial interest. Plaintiffs contend the evidence is relevant to show that staff and the City Attorney allowed and participated in such violations, therefore supporting an inference of bias; that some of the commissioners participating in the DRC approval of the application in this case had violated the Political Reform Act, thus undermining the credibility of the decisions they made; that City staff

23

had multiple meetings with Sayles in which he violated the Political Reform Act; and as impeachment of the City Attorney's credibility. In excluding the evidence, the trial court explained that the extent to which commissioners had a practice of improperly representing their clients before the City "had little or nothing to do with the way in which the project was considered or with the result" in this case. The court concluded the evidence was thus not relevant, and if relevant, under Evidence Code section 352 it was not sufficiently probative to justify the additional time it would consume.

We review a trial court's ruling on the exclusion of evidence for abuse of discretion. (*People et. rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639–640), and we find none here. The trial court could reasonably conclude that the evidence of commissioners' practices in other cases would expand the scope of the issues before the court and have little or no probative value as the court considered whether in *this* case, plaintiffs received a fair hearing.

### III. Mootness

Finally, we briefly consider and reject the City's affirmative defense that, because the applicants have already completed construction of the cabaña, the case is moot to the extent it seeks an injunction ordering the City to vacate and rescind the resolution approving the project or taking any action based on the hearings. Even when a challenged project has been completed during the course of litigation, a court may still grant effective relief where the project may be modified or torn down to restore the property to its original condition. (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888–889 [failure to prepare environmental impact report].) In the circumstances before us, it is appropriate for us to consider plaintiffs' contentions on the merits, and we have done so.

24

The City has asked us to take judicial notice of evidence that the cabaña has passed its inspection and is complete.  We deny the request.

## DISPOSITION

The judgment is affirmed.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
BROWN, J.

*Fowler v. City of Lafayette* (A156525)

26

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Edward G. Weil |
| Counsel for Appellants: | Larson O'Brien LLP, Scott A. Sommer; and Gary S. Garfinkle |
| Counsel for Respondent: | Keker, Van Nest & Peters LLP, Benedict Y. Hur, Justina Sessions, and Neha Mehta |