[No. S155589. Feb. 9, 2009.]

MORONGO BAND OF MISSION INDIANS, Plaintiff and Respondent, v. STATE WATER RESOURCES CONTROL BOARD, Defendant and Appellant.

## COUNSEL

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Gordon Burns, Deputy State Solicitor General, Tom Greene and Janet Gaard, Chief Assistant Attorneys General, Mary E. Hackenbracht, Assistant Attorney General, and Matthew J. Goldman, Deputy Attorney General, for Defendant and Appellant.

Manuela Albuquerque and Patrick Whitnell for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Peter H. Mixon and S. Kingsley Macomber for California Public Employees' Retirement System as Amicus Curiae on behalf of Defendant and Appellant.

Michael Asimow as Amicus Curiae on behalf of Defendant and Appellant.

Somach Simmons & Dunn, Stuart L. Somach, Kristen T. Castaños, Kanwarjit S. Dua and Daniel Kelly for Plaintiff and Respondent.

Diepenbrock Harrison, Michael V. Brady, Jon D. Rubin, David A. Diepenbrock, Valerie C. Kincaid and Sean K. Hungerford for San Luis & Delta-Mendota Water Authority and Westlands Water District as Amici Curiae on behalf of Plaintiff and Respondent.

Downey Brand, Kevin M. O'Brien, Maja K. Haium and Andrea P. Clark as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**KENNARD, J.**—In an administrative proceeding to revoke a water license, does it violate the license holder's constitutional right to due process of law, as the Court of Appeal held here, for the agency attorney prosecuting the matter before the State Water Resources Control Board to simultaneously serve as an adviser to that board on an unrelated matter? We conclude that the answer is no, and we therefore reverse the Court of Appeal's judgment.

## I

The Morongo Band of Mission Indians (Morongo Band), a federally recognized California Indian tribe, is the current holder of a license to divert water, for irrigation purposes, from springs arising in Millard Canyon in Riverside County. In April 2003, the State Water Resources Control Board (Board) issued a notice of proposed revocation of that license on the grounds that the Morongo Band, or prior holders of the same license, had failed to beneficially use the water for an extended period and had violated license terms by using the water for unauthorized purposes. (See Wat. Code, §§ 1675–1675.1.) The Morongo Band requested a hearing to contest the proposed license revocation. The Board issued a notice of public hearing, which identified Staff Counsel Samantha Olson as a member of the enforcement team prosecuting the case.

In March 2004, before the public hearing was held, the Morongo Band petitioned the Board to disqualify the entire enforcement team prosecuting its license revocation because one or more team members had concurrently advised the Board in other matters. Citing the then recent Court of Appeal decision in *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810 [7 Cal.Rptr.3d 896], the Morongo Band asserted that these dual prosecutorial and advisory roles of the enforcement team members had created "an inappropriate and impermissible appearance of unfairness and bias sufficient to compel their removal." In support of the petition, the Morongo Band submitted a declaration stating that during the pendency of the license revocation proceeding, in which Samantha Olson was acting in a prosecutorial capacity as a member of the enforcement team, she was also acting in an advisory capacity as a member of the hearing team in a separate matter before the Board, regarding the Lower American River.

A hearing officer denied the Morongo Band's petition to disqualify the enforcement team, and the Morongo Band petitioned the Board for reconsideration of that ruling. (See Wat. Code, § 1122.)

In April 2004, while the petition for reconsideration was pending before the Board, the Morongo Band filed in superior court a petition for writ of

mandate. (Wat. Code, § 1126; Code Civ. Proc., § 1094.5.) In the petition, the Morongo Band contended that the hearing officer had abused his discretion and violated the Morongo Band's due process rights by denying the petition to disqualify the enforcement team. In July 2004, the Board issued an order denying the Morongo Band's reconsideration petition, and the Morongo Band filed an amended petition in superior court seeking review of that order.

In opposition to the Morongo Band's writ petition, the Board submitted a declaration by Victoria Whitney, the head of its Division of Water Rights, describing relevant aspects of the agency's internal structure and operating procedures. According to that description, which the Morongo Band does not dispute, the agency, at that time, was divided into several offices, including an executive office and an office of chief counsel, and also into four divisions: administrative services, water quality, financial assistance, and water rights. The office of chief counsel employed 37 attorneys, who were assigned to different practice areas. Around a third of those attorneys advised the nine regional water quality control boards (see Wat. Code, § 13200 et seq.), while the other attorneys assisted and advised the five-member Board, which governs the agency, in various practice areas, including water quality, loans and grants, underground storage tanks, and water rights.

Five agency attorneys practice in the area of water rights. In water rights adjudicative proceedings, a Board member serves as the hearing officer, and the agency's practice is to separate the prosecutorial and advisory functions on the staff level, with some employees assigned to an enforcement team and others to a hearing team. For each proceeding, the office of chief counsel assigns different staff attorneys to the enforcement and hearing teams. Although agency staff employees do not combine adjudicative and prosecutorial functions in the same proceeding, a staff attorney assigned to an enforcement team may also be assigned to advise the Board members, in an unrelated proceeding, as a hearing team member.

The hearing officer and the other Board members treat the enforcement team "like any other party." Agency employees assigned to the enforcement team are screened from inappropriate contact with Board members and other agency staff through strict application of the state Administrative Procedure Act's rules governing ex parte communications.[1] (Gov. Code, § 11430.10 et seq.) "In addition, there is a physical separation of offices, support staff, computers, printers, telephones, facsimile machines, copying machines, and rest rooms between the hearing officer and the enforcement team (as well as the hearing team)," according to the Whitney declaration. "Staff members of

---

[1] By administrative regulation, the state Administrative Procedure Act's rules regarding ex parte communications govern adjudicative proceedings before the Board. (Cal. Code Regs., tit. 23, § 648, subd. (b).)

the enforcement team and hearing team have their separate work spaces, computers, e-mail accounts and telephones, but they may in some cases share support staff, printers, facsimile machines, copying machines and rest rooms."

For the Morongo Band license revocation proceeding, Samantha Olson was the staff attorney assigned to the enforcement team while another attorney, Dana Heinrich, was assigned to the hearing team. For this proceeding, Olson's supervisor is Andrew Sawyer, an assistant chief counsel, and Heinrich's supervisor is Chief Counsel Craig M. Wilson. Consistent with the state Administrative Procedure Act's rules governing ex parte communications (Gov. Code, §§ 11430.10–11430.80), Olson has been and will be screened from inappropriate contact with Wilson relating to this proceeding (even though Wilson is normally Olson's indirect supervisor), and Heinrich has been and will be screened from inappropriate contact with Sawyer (even though Sawyer is normally Heinrich's supervisor). Similar separation and screening procedures are used for team assignments and supervision of the agency's nonattorney technical staff.

The agency has employed Samantha Olson since October 2001. Before the Morongo Band license revocation proceeding, she had served as an enforcement team member three times. The only adjudicative proceeding in which she served as a hearing team member, advising the Board, was an unrelated matter on a petition to revise the Board's "fully appropriated stream declaration" regarding the Lower American River. That proceeding terminated in January 2005.

After considering the materials submitted by the parties, the trial court granted the petition for writ of mandate compelling Olson's disqualification. The Board appealed, and the Court of Appeal, over one justice's dissent, affirmed the trial court's judgment granting the writ.

We granted the Board's petition for review.

## II

Under the Fifth Amendment to the United States Constitution, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." (See also U.S. Const., 14th Amend. ["[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law"].) In almost identical words, the California Constitution likewise guarantees due process of law. (Cal. Const., art. I, §§ 7, subd. (a) ["A person may not be deprived of life, liberty, or property without due process of law"], 15 ["Persons may not . . . be deprived of life, liberty, or property without due process of law."].)

■ When, as here, an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. (*Withrow v. Larkin* (1975) 421 U.S. 35, 46 [43 L.Ed.2d 712, 95 S.Ct. 1456].) A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party. (*People v. Harris* (2005) 37 Cal.4th 310, 346 [33 Cal.Rptr.3d 509, 118 P.3d 545]; see *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025 [119 Cal.Rptr.2d 341, 45 P.3d 280] ["When due process requires a hearing, the adjudicator must be impartial."].) Violation of this due process guarantee can be demonstrated not only by proof of actual bias, but also by showing a situation "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." (*Withrow v. Larkin, supra,* at p. 47.)

Unless they have a financial interest in the outcome (see *Haas v. County of San Bernardino, supra,* 27 Cal.4th at p. 1025), adjudicators are presumed to be impartial (*Withrow v. Larkin, supra,* 421 U.S. 35, 47). Here, the Morongo Band has presented no evidence that the Board, or any of its members, is actually prejudiced against it. Instead, it argues that when the agency attorney who is prosecuting an administrative license revocation proceeding has concurrently advised the adjudicator in a separate albeit unrelated matter, the risk that the agency adjudicator will be biased in favor of the prosecuting agency attorney is of a magnitude sufficient to overcome the presumption of impartiality. We disagree. As we explain, any tendency for the agency adjudicator to favor an agency attorney acting as prosecutor because of that attorney's concurrent advisory role in an unrelated matter is too slight and speculative to achieve constitutional significance.

■ By itself, the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions. (*Withrow v. Larkin, supra,* 421 U.S. 35, 54; see *Adams v. Commission on Judicial Performance* (1995) 10 Cal.4th 866, 880–884 [42 Cal.Rptr.2d 606, 897 P.2d 544]; *Kloepfer v. Commission on Judicial Performance* (1989) 49 Cal.3d 826, 833–835 [264 Cal.Rptr. 100, 782 P.2d 239]; Pierce, Administrative Law Treatise (4th ed. 2002) § 9.9, pp. 688–689.) Thus, "[p]rocedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 10 [50 Cal.Rptr.3d 585, 145 P.3d 462].)

■ As we recently explained (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th at

pp. 8–9), the state Administrative Procedure Act (Gov. Code, § 11400 et seq.) was revised in 1995 in accordance with recommendations of the California Law Revision Commission, after the commission had studied the matter for seven years. (See Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Revision Com. Rep. (1995) p. 55.) To ensure the impartiality of administrative adjudicators, the act generally prohibits ex parte communications (Gov. Code, § 11430.10) and requires "internal separation of functions" (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th at pp. 8–9; see Gov. Code, §§ 11425.10, subd. (a)(4), 11425.30).

Significantly, however, the state Administrative Procedure Act requires the internal separation of prosecutorial and advisory functions on a case-by-case basis only. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th at p. 16, fn. 12 ["As . . . the text of [the state Administrative Procedure Act] plainly allows, the separation of functions can be accomplished on a case-by-case basis."].) The act does not prohibit an agency employee who acts in a prosecutorial capacity in one case from concurrently acting in an advisory role in an unrelated case. We have summarized the act's relevant restrictions this way: "The agency head is free to speak with anyone in the agency and to solicit and receive advice from whomever he or she pleases—anyone except the personnel who served as adversaries *in a specific case.* [Citations.] Indeed, the agency head can even contact the prosecutor to discuss settlement or direct dismissal. [Citations.] Virtually the only contact that is forbidden is communication in the other direction: a prosecutor cannot communicate off the record with the agency decision maker or the decision maker's advisers *about the substance of the case.*" (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* at pp. 16–17, italics added, fn. omitted; see also Gov. Code, § 11430.30, subd. (a) [allowing ex parte communication "for the purpose of assistance and advice to the presiding officer from a person who has not served as investigator, prosecutor, or advocate *in the proceeding or its preadjudicative stage*" (italics added)].)

The federal Administrative Procedure Act is to the same effect, requiring internal separation of functions, but only on a case-by-case basis. It provides: "An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, *in that or a factually related case,* participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings." (5 U.S.C. § 554(d), italics added; see also Asimow, *The Influence of the Federal Administrative Procedure Act on California's New Administrative Procedure Act* (1996) 32 Tulsa L.J. 297, 316 [stating that "[s]eparation of functions must be defined and administered in

ways that permit decisionmakers access to needed staff advice except in cases where the adviser has significant adversarial involvement in the case under decision."].)

The Morongo Band has not cited, nor has our own research uncovered, a decision from any federal court, or from a court of any other state, agreeing with the holding of the Court of Appeal here that in an administrative license revocation proceeding it is a violation of the license holder's constitutional right to due process of law for the agency attorney acting as prosecutor to concurrently advise the administrative decision maker in an entirely unrelated proceeding.

The Court of Appeal here concluded, however, that internal separation of functions on a case-by-case basis is insufficient to satisfy the constitutional requirements for due process of law, and that an administrative agency's internal separation of functions must be complete not only as to each individual case, but also as to all cases, related or unrelated, that are pending before the agency at any given point in time. To support its conclusion, the Court of Appeal relied on *Quintero v. City of Santa Ana, supra,* 114 Cal.App.4th 810 (*Quintero*). There, a city employee (Quintero) appealed a misconduct discharge to the city's personnel board. After a hearing, the personnel board upheld the discharge. Quintero then petitioned the superior court for a writ of mandate, arguing that the administrative hearing before the personnel board was unfair because the deputy city attorney (Halford) who had acted as prosecutor had concurrently represented the personnel board in civil actions. (*Id.* at p. 812.) The superior court denied the petition, but on Quintero's appeal the Court of Appeal reversed, finding "a clear appearance of bias and unfairness at the administrative hearing." (*Ibid.*)

The Court of Appeal in *Quintero* did not use the per se approach that the Court of Appeal adopted here. After acknowledging there was no evidence that Halford, the deputy city attorney who had prosecuted Quintero, had also acted as the city personnel board's legal adviser in the Quintero discharge matter, the court proceeded to examine Halford's other interactions with the personnel board. (*Quintero, supra,* 114 Cal.App.4th at pp. 814–816.) The court concluded that in litigation over the discharge of two other city employees, Cabrera and Pollitt, internal separation of advisory and prosecutorial functions had not been maintained because Halford had represented the personnel board in superior court mandate proceedings after acting as a prosecutor in administrative proceedings before that board. (*Id.* at p. 815.) The court also noted that Halford had played a leading role in advising the personnel board about revision of its procedural rules and had acted as the personnel board's legal adviser in other important matters during the years immediately preceding Quintero's discharge. (*Id.* at p. 816.)

Stating that "[i]t appears the lines distinguishing Halford's roles of advocate and adviser have become blurred," the Court of Appeal in *Quintero* stated that "[f]or the [personnel board] to allow its legal adviser to also act as an advocate before it creates a substantial risk that the [personnel board]'s judgment in the case before it will be skewed in favor of the prosecution." (*Quintero, supra*, 114 Cal.App.4th at p. 817.) The court explained its holding in these words: "We do not hold that the frequent contacts between Halford and the [personnel board] are themselves sufficient to demonstrate the probability of actual bias. Rather, our decision is based on the totality of circumstances." (*Ibid.*)[2]

Thus, the *Quintero* Court of Appeal appears to have relied on two circumstances not present here. First, in the earlier employee discharge matters involving Cabrera and Pollitt, the agency's internal separation of functions had not been maintained. Rather, in each of those matters, Deputy City Attorney Halford had acted in both prosecutorial and advisory capacities, taking a confidential and advisory role as the personnel board's legal representative in superior court mandate proceedings after having acted as a prosecutor in the adversarial proceedings before the personnel board. Second, the record suggested that Halford had become more than just one among a group of legal advisers that the personnel board could consult, and instead had become its sole or primary legal adviser. Under its totality-of-the-circumstances approach, the *Quintero* Court of Appeal relied on both of these circumstances in combination to support its conclusion that constitutional due process had been violated.

Here, by contrast, there is no evidence of either circumstance. There is no evidence that Staff Counsel Samantha Olson, or any other agency staff attorney, ever acted in both advisory and prosecutorial capacities in this or any other single adjudicative proceeding.[3] Nor is there any evidence that the Board has ever regarded Olson as its sole or primary legal adviser. On the contrary, the undisputed evidence is that Olson has advised the Board in only one matter, which concerned the Lower American River and was unrelated to the Morongo Band's license revocation proceeding, and that she is just one of a

---

[2] Although the *Quintero* Court of Appeal stated and applied a totality-of-the-circumstances test, its opinion also contains language suggesting the existence of a per se rule barring agency attorneys from simultaneously exercising advisory and prosecutorial functions, even in unrelated proceedings. Thus, for example, the court stated that "[w]hat is inappropriate is one person simultaneously performing both functions" and that "the attorney may occupy only one position at a time and must not switch roles from one meeting to the next." (*Quintero, supra*, 114 Cal.App.4th at p. 817.) We disapprove any language in *Quintero v. City of Santa Ana, supra*, 114 Cal.App.4th 810, that is inconsistent with our decision here.

[3] In superior court, and in later appellate proceedings in this matter, the Attorney General, rather than Olson or any other staff counsel, has represented the Board. (See Wat. Code, § 186, subd. (c) ["The Attorney General shall represent the board . . . in litigation concerning affairs of the board . . . ."].)

group of staff attorneys from whom the Board may obtain legal advice. Because *Quintero, supra*, 114 Cal.App.4th 810, is distinguishable in these ways, it does not provide persuasive authority for the Court of Appeal's holding here.

The Court of Appeal's stated rationale for its per se rule is that "[h]uman nature being what it is, the temptation is simply too great for the . . . Board members, consciously or unconsciously, to give greater weight to Attorney Olson's arguments by virtue of the fact she also acted as their legal adviser, albeit in an unrelated matter." As Justice Robie observed, in his dissenting opinion in the Court of Appeal, the majority's relationship-bias reasoning "applies far beyond the situation where an attorney is simultaneously acting as an advocate before an administrative board and an adviser to the board in an *unrelated matter*." That reasoning would apply also when the prosecuting agency attorney has acted as an adviser to the agency adjudicator in an unrelated matter at any time in the past. Arguably, the rationale would also require disqualification of an attorney representing a license holder like the Morongo Band if that attorney at any time in the past had served the agency adjudicator in an advisory capacity in an unrelated matter. And in countless other situations when the adjudicator may have formed a favorable opinion of the abilities of one of the litigating attorneys through some previous social or professional interaction, the Court of Appeal's reasoning would require the attorney's disqualification, even though this court has concluded that similar relationships ordinarily are not disqualifying. (See, e.g., *People v. Carter* (2005) 36 Cal.4th 1215, 1243–1244 [32 Cal.Rptr.3d 838, 117 P.3d 544]; see also *People v. Vasquez* (2006) 39 Cal.4th 47, 64 [45 Cal.Rptr.3d 372, 137 P.3d 199] ["As neither judges nor prosecutors can completely avoid personal influences on their decisions, to constitutionalize the myriad distinctions and judgments involved in identifying those personal connections that require a judge's or prosecutor's recusal might be unwise, if not impossible."].)

■ In construing the constitutional due process right to an impartial tribunal, we take a more practical and less pessimistic view of human nature in general and of state administrative agency adjudicators in particular. In the absence of financial or other personal interest, and when rules mandating an agency's internal separation of functions and prohibiting ex parte communications are observed, the presumption of impartiality can be overcome only by specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias. Unless such evidence is produced, we remain confident that state administrative agency adjudicators

will evaluate factual and legal arguments on their merits, applying the law to the evidence in the record to reach fair and reasonable decisions.

The Court of Appeal's judgment is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.