Filed 6/21/24  Stronghold Engineering v. City of Monterey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| STRONGHOLD ENGINEERING, INCORPORATED, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF MONTEREY, <br><br> Defendant and Respondent. | D082763 <br><br> (Super. Ct. No. CVRI2103427) |

APPEAL from a judgment of the Superior Court of Riverside County, Chad W. Firetag, Judge.  Affirmed in part, reversed in part and remanded.

Varela, Lee, Metz & Guarino and Andrew Van Ornum, for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley; Michael G. Colantuono, Megan A. Wharton and Merete E. Rietveld; Christine Davi, City Attorney, for Defendant and Respondent.

Appellant Stronghold Engineering Incorporated (Stronghold) successfully bid to renovate the City of Monterey's (the City) conference center and Portola Plaza (the Project). The City later issued a notice of violation against Stronghold under the Subletting and Subcontracting Fair Practices Act (Pub. Contract Code,[1] § 4100 et seq., the Act) for allegedly substituting its concrete and waterproofing subcontractors without notice or the City's consent. Stronghold appealed to the City's Appeals Hearing Board (the Board) who sided with the City and assessed penalties against Stronghold for both substitutions. Stronghold filed this action challenging the Board's decision and the role of a city attorney at the hearing. The trial court found in the City's favor.

Stronghold appeals from the court's ruling, contending: (1) the Board did not conduct a fair hearing consistent with due process; (2) the laches doctrine barred the City's claims; and (3) substantial evidence does not support the Board's decision. We conclude the City's claim as to the waterproofing subcontractor is barred by laches and remand the matter to the trial court to reverse this penalty assessment. We otherwise reject Stronghold's arguments.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In October 2015, Stronghold submitted a bid to the City for the Project. The bid listed West Coast Concrete as the concrete subcontractor and Gino Rinaldi, Inc. (Rinaldi) as the waterproofing subcontractor. In November 2015, the City awarded the Project contract to Stronghold and the parties

---

[1] Undesignated statutory references are to the Public Contract Code.

[2] This section provides a brief background regarding the parties' disputes. We provide additional background facts in the sections of this opinion addressing Stronghold's arguments on appeal.

entered into a written contract. Stronghold sub-contracted with Perry Coast Construction (Perry) for the concrete work in December 2015 and with F.D. Thomas, Inc. (F.D. Thomas) for waterproofing in April 2016.

In 2016, Stronghold sued the City regarding interpretation of the contract and later amended its complaint to seek damages due to the City's alleged deficient design and resulting delays (the civil litigation). The City filed its initial cross-complaint in January 2018. In March 2020, the City claimed it learned of the subcontractor substitutions during discovery. In January 2021, it amended its cross-complaint to allege that Stronghold violated the Act based on its substitution of Perry for West Coast Concrete and F.D. Thomas for Rinaldi. The civil litigation is still pending.

Separately, in September 2020, the City's public works director sent Stronghold a letter notifying it of the Act violations and that the matter had been set for a hearing before the Board to consider the City's request for $437,230 in statutory penalties. As relevant here, the letter claimed: (1) Perry and West Coast Concrete were not the same company, and West Coast Concrete did not exist; and (2) Stronghold contracted with F.D. Thomas for the waterproofing, not Rinaldi as listed in the bid. After a hearing, on December 7, 2020, the Board issued a decision penalizing Stronghold for two violations of the Act. It imposed a $291,000 penalty for the concrete subcontractor substitution and $50,000 for the waterproofing subcontractor substitution, totaling $341,000.

Stronghold initiated this action by filing a combined petition for traditional mandamus (Code Civ. Proc., § 1085) and administrative mandamus (*id.*, § 1094.5) challenging the Board's decision. Among other things, Stronghold claimed the hearing process was unfair, the City's allegations should have been time-barred, and the evidence did not support

3

the Board's decision. The trial court denied the writ, finding Stronghold received a fair hearing and substantial evidence supported the Board's conclusion that Stronghold violated the Act.

## DISCUSSION

### I. *THE BOARD'S HEARING WAS FAIR*

Stronghold argues on appeal that the Board was unconstitutionally biased against it because the Board's legal advisor at the hearing, Salameh, was an attorney in the office that was suing it in the civil litigation, i.e. the City Attorney's Office.[3]

A. *Additional Background*

At the Board's contested hearing to consider penalties against Stronghold based on alleged violations of the Act, the City was represented by outside counsel, the same outside counsel who represented the City in the civil litigation. Salameh was present at the hearing to advise the Board. Specifically, review of the hearing transcript shows Salameh acted as an advisor and moderator regarding proper hearing procedures. Because of Salameh's involvement in the hearing, Stronghold objected to the hearing process as unfair. In response, Salameh made an unsworn statement claiming she has been segregated from other members of the City Attorney's Office and has not communicated with the public works director or any other colleagues in her office regarding the Board hearing or their preparations for it. Davi made a similar unsworn statement for the record.

---

[3] In the civil litigation, the caption of the amended cross-complaint lists as representing the City both the City Attorney's Office and City Attorney Christine Davi, and outside counsel. Salameh is not listed on the caption in the civil litigation.

After the hearing, Salameh drafted the Board's proposed decision. At a subsequent hearing to adopt the proposed decision, she stated: "I tried to distill the Board's deliberations from the November 18th, 2020 hearing and the findings they made and then the ultimate vote imposing penalties for two violations. So I tried to capture all of that in the written decision but, of course, you are welcome to edit and provide further direction as you see fit." The Board adopted the proposed decision as its own.

Stronghold filed a verified petition for traditional mandamus and administrative mandamus in the superior court, seeking to set aside the Board's decision. The court granted Stronghold's motion to augment the administrative record to include a privilege log from the City showing Salameh's communications relating to the civil litigation. The privilege log shows that from November 10, 2014, to July 31, 2018, Salameh was copied on 14 privileged communications. On March 9, 2018, after being copied on two privileged communications, Salameh prepared two privileged emails and directly received two privileged emails. After the privilege log was mentioned at the hearing, Salameh stated, "And, again, I'll just say for the record, you know, those likely were e-mails with Staff from years ago. I have not been communicating with anyone in the Public Works Department regarding any of the subcontracting issues that are before the Board today."

The trial court acknowledged that Stronghold had presented evidence showing Salameh was involved in the civil lawsuit but found that "the evidence does not show . . . bias on the part of the City, nor is there any evidence to conclude that Salameh's representation [about being screened from the civil lawsuit] was untrue or unreliable." The court stated:

> "Here, the civil lawsuit was filed on 12/13/16. The bulk of
> the emails in the privilege log that involve Ms. Salameh,
> just have her cc'ed on the email. Out of the 18 emails, she

5

only prepared two of the emails on the privilege log and only directly received two emails, one of these emails was sent before the civil lawsuit was filed. Petitioner has provided no evidence that Ms. Salameh had more involvement in this matter than the 18 emails listed on the privilege log, which span 4 years. It points to no evidence that Ms. Salameh had any involvement in the civil matter after July 2018. It points to no evidence that Ms. Salameh had any involvement in the investigation regarding [Act]violations. It fails to point to or provide any evidence that Ms. Salameh has any personal or financial interest or actual bias in the [Act] violations or civil lawsuit. There is no evidence in the record that Ms. Salameh has had any involvement in the civil lawsuit filed by Petitioner since July 2018, that her involvement in this matter was substantial, that she had any financial interest, or actual bias in the [Act] or civil matter."

B. *Analysis*

The determination of whether the administrative proceeding was fundamentally fair is a question of law that we review de novo. (*Nightlife, Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 87 (*Nightlife*).) If there are conflicts in the evidence, then we apply the substantial evidence test to the findings that support the trial court's factual determinations. (*Ibid.*)

"When . . . an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party." (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 (*Morongo*).) A due process violation can be established by proof of an agency's actual bias; or "by showing a situation 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be

6

constitutionally tolerable.' " (*Id.* at p. 737; see also *Knudsen v. Department of Motor Vehicles* (2024) ___ Cal.App.5th ___, ___ [2024 Cal.App. LEXIS 228, *9].)

As a preliminary matter, we note that Stronghold does not assert that Salameh was involved in the preparation or presentation of the Act's violations to the Board; instead, it contends that because the City's cross-claims in the civil litigation included allegations of Act violations, they are functionally the same matter. Stronghold then argues that because Salameh had taken an adversarial role against Stronghold concerning the same disputes in the civil litigation, her role "tainted her from being impartial" before the Board and therefore tainted the Board's decision.

We do not agree that the Board hearing and the civil litigation are the same proceeding, but we acknowledge the overlap between the allegations in the Board proceeding and the cross-claims in the amended complaint. Accordingly, we will consider Stronghold's unfairness arguments as if they arose in the course of a single proceeding.

In *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575 (*Howitt*) our court addressed "the foundational question . . . whether a county counsel's office 'is ever permitted to place [it]self in [the] position' of acting as an advocate for one party in a contested hearing while at the same time serving as the legal adviser for the decision maker." (*Id.* at p. 1579.) In *Howitt*, the decision maker was a quasi-independent commission established to resolve county employment disputes. (*Id.* at p. 1578.) During a contested evidentiary hearing over a complaint against the sheriff's department by an employee, an attorney from the county counsel's office represented the sheriff's department, while a second attorney from that office advised the commission. (*Ibid.*) The court concluded that county counsel could not

7

undertake this dual representation, in which the office was both advocate and adviser to the decision maker in a contested hearing, unless "there are assurances that the advisor for the decision maker is screened from any inappropriate contact with the advocate." (*Id.* at p. 1586; see *id.* at pp. 1579, 1587.)

The *Howitt* court stated that the party asserting proper screening had the burden "to demonstrate its existence and effectiveness." (*Howitt, supra*, 3 Cal.App.4th at p. 1587.) In a footnote, the *Howitt* court remarked on screening: "we do not envision that an adequate screening procedure for due process purposes requires the creation of functionally separate offices to advocate and advise. It should be sufficient if the lawyer advising the Board has no potential involvement in or responsibility for the preparation or presentation of the case." (*Id.* at p. 1587, fn. 4.)[4]

Thus, our first inquiry is whether the City sufficiently demonstrated the "existence and effectiveness" of measures to ensure that Salameh had "no potential involvement in or responsibility for the preparation or presentation" in the civil litigation against Stronghold. (*Howitt, supra*, 3 Cal.App.4th at p. 1587 & fn. 4.) We conclude they have.

Salameh and Davi represented at the contested hearing that Salameh had been screened from other members of the City Attorney's Office and had no contact with other members of the office regarding the Act violations.[5] The City's privilege log supports this conclusion.

---

[4] As noted *ante*, Stronghold does not contend that Salameh had any involvement in the preparation or presentation of the Acts violation before the Board, and Salameh and Davi specifically denied such involvement.

[5] Although Salameh's and Davi's statements are unsworn, Stronghold did not object to them on this basis at the hearing, and therefore the contentions are forfeited. (*Niles Freeman Equipment v. Joseph* (2008)

8

The privilege log shows that between November 2014 and July 2018, Salameh was privy to a total of 18 privileged communications regarding the Project and that she authored two of those emails. Further, the privilege log shows Salameh's last communication about the civil litigation was sent in July 2018, approximately 20 months before March 2020, when the City claimed it first learned of the subcontractor substitutions. Thus, Salameh's brief and tangential involvement in the civil litigation ended well before the alleged Act violations were even discovered.

Salameh's separation from the civil litigation makes the instant case distinguishable from the cases Stronghold relies on. For example, in *Midstate Theatres, Inc. v. County of Stanislaus* (1976) 55 Cal.App.3d 864, the appellate court found dual representation to be improper where a lawyer represented a county assessor whose valuations had been challenged, and the same lawyer then advised the board of equalization at hearings addressing the challenged assessments. (See also *Howitt, supra,* 3 Cal.App.4th 1575; *Nightlife, supra,* 108 Cal.App.4th at p. 94 [city attorney's "role as advisor to the decision-maker" regarding denial of the plaintiff's regulatory permit "violated petitioners' right to due process" because the attorney "acted as both an advocate of City's position and as advisor to the supposedly neutral decision-maker"].)

---

161 Cal.App.4th 765, 787 ["issues not presented at an administrative hearing cannot be raised on review"].) Further, as the Board chair noted at the start of the contested hearing, the hearing was informal, the rules of evidence did not apply and "the Board may consider any evidence or information deemed relevant and reasonably reliable." The trial court necessarily considered Salameh's and Davi's unsworn statements to be "reasonably reliable." We do as well.

9

Having concluded that the City sufficiently screened Salameh from the civil litigation, we consider whether Stronghold met its burden of establishing bias. We begin with the presumption of impartiality.

In *Morongo*, *supra*, 45 Cal.4th 731, the Morongo Mission Band of Indians challenged the team of attorneys prosecuting a license revocation case against the Band before the State Water Resources Control Board because one of the attorneys was also advising the board on an unrelated matter. (*Id.* at p. 734.) In considering the propriety of the dual representation, the court dismissed the notion of an absolute separation between an agency's enforcement and advisory roles, emphasizing instead the importance of the board's impartiality. (*Id.* at p. 739, see *id.* at pp. 741–742.) It found that in the absence of financial or personal interest, and where the agency adheres to rules mandating internal separation of functions and prohibiting ex parte communications, "the presumption of impartiality can be overcome only by specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias." (*Id.* at p. 741.) The *Morongo* court rejected the idea of a blanket prohibition on agency attorneys holding both advisory and prosecutorial roles simultaneously, especially in unrelated matters. (*Id.* at pp. 739–741 & 740, fn. 2.)

Thus, under *Morongo*, we presume the Board's impartiality, unless Stronghold can overcome the presumption "by specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias." (*Morongo*, *supra*, 45 Cal.4th at pp. 741–742.) Stronghold has failed to present such evidence.

10

Relying on *Ward v. Monroeville* (1972) 409 U.S. 57 (*Ward*), Stronghold suggests that Salameh and the Board had a financial interest in the outcome of the hearing because penalties are paid to the City.  We reject this argument.  In *Ward*, a mayor, authorized by state statute to sit as judge in cases of certain traffic offenses, convicted the defendant of two such offenses and fined him a total of $100.  (*Id.* at p. 57.)  Under these circumstances, the court held that a possible temptation "to forget the burden of proof required to convict the defendant" plainly existed because "the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court."  (*Id.* at p. 60.)

In contrast, in *Lent v. California Coastal Commission* (2021) 62 Cal.App.5th 812 (*Lent*), the appellate court held the appellants, oceanfront landowners, did not carry their burden of demonstrating the Coastal Commission had such a disqualifying financial bias when it imposed a penalty of more than $4 million for obstructing public access to the beach. (*Id.* at pp. 825, 853.)  The court found appellants "did not meet their burden of showing the commissioners have a strong enough institutional financial interest in the penalties they impose to create a constitutionally impermissible risk of bias," because no evidence existed showing how much the commissioners rely on the penalties to carry out their executive duty to implement the Coastal Act.  (*Id.* at p. 853.)  Without such evidence the court could not "determine whether the commissioners' motives are strong enough to reasonably warrant a 'fear of partisan influence' on the Commission's judgment or to cause the commissioners " ' "not to hold the balance nice, clear, and true between the state and the accused." ' "  (*Ibid.*)  Similarly, Stronghold failed to produce any evidence to suggest that penalties fund the Board's work or pay Salameh's salary.  Absent such evidence, an adjudicator

11

with no financial interest in the outcome is "presumed to be impartial." (*Morongo, supra*, 45 Cal.4th at p. 737.)

Bias may not be implied; instead, the requisite evidence must come from " 'concrete facts.' " (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 483 (*Nasha*).) " '[A] party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals.' " (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1237.) Here, beyond Stronghold's articulated concern about Salameh's role, the record contains no specific facts that establish actual bias or even the probability of bias on the part of the Board as a result of Salameh's advisory position during the hearing.

Finally, Stronghold notes that the proposed decision Salameh drafted, which the Board subsequently adopted without change, contained two findings not directly ruled on by the Board, including: (1) "[i]n the interest of fairness, the Board's decision places the burden on the City to establish by a preponderance of the evidence that [Stronghold] violated the [Act]"; and (2) "This Board finds that [the City's assessment of penalties was not barred by the statute of limitations]." Stronghold contends the Board likely adopted Salameh's proposed decision based on her established relationship with the Board. Stronghold likens this to the facts in *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810,[6] where the attorney played a leading role in advising the personnel board about revision of its procedural rules and had acted as the personnel board's legal adviser in other matters during the years

---

6    *Quintero* disapproved of in part in *Morongo*, *supra*, 45 Cal.4th at p., 740, fn. 2.)

12

immediately preceding the discharge claim at issue. (*Id*. at p. 816.) Here, unlike *Quintero*, there is no evidence in the record showing Salameh had a longstanding relationship with the Board before the contested hearing.

Moreover, while Stronghold is correct that the Board did not debate who had the burden of proof or whether the City's claims were untimely, Stronghold raised both issues at the hearing and the City addressed the timeliness issue in its closing argument. Stronghold does not explain why it was improper for Salameh to include in the proposed decision two disputed issues that had been presented to the Board at the contested hearing. Additionally, the Board impliedly rejected Stronghold's timeliness challenge when it adopted the motion to assess penalties against Stronghold.

Under the independent standard of review, the foregoing facts do not establish Stronghold was denied a fair hearing or suffered a due process violation.

## II. *TIMELINESS OF THE CITY'S CLAIMS*

Stronghold argues that the City's claims were barred by laches, that the one-year statute of limitations of Code of Civil Procedure section 340 applied, and that the City knew the facts giving rise to its claims under the Act but inexcusably waited to initiate its claims.

A. *Legal Principles*

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.'" (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156 (*Magic Kitchen*).) This principle "has been made applicable to quasi adjudicative proceedings as a common law policy pursuant to the 'inherent power [of courts] independent of statutory provisions to dismiss an action on motion of the defendant where it is not

13

diligently prosecuted.' " (*Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1158).

Laches is an affirmative defense and the defendant has the burden of proof on each element of the defense. (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.) Where, as here, " ' "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals," ' " " ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law" ' because ' " the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Lent, supra,* 62 Cal.App.5th at p. 837 [applying this standard to a laches defense].) "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Department of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

A laches defense has three elements: (1) the plaintiff delayed in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) the defendant suffered prejudice.[7] (*Magic Kitchen, supra,* 153 Cal.App.4th at p. 1157.) In matters before administrative agencies, "the element of prejudice may be 'presumed' if there exists a statute of limitations which is sufficiently analogous to the facts of the case, and the period of such statute of limitations has been exceeded by the public administrative agency in making its claim. In [this] situation, the limitations period is 'borrowed'

---

[7] Prejudice " ' "ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." ' " (*Magic Kitchen, supra,* 153 Cal.App.4th at p. 1161.)

14

from the analogous statute, and the burden of proof shifts to the administrative agency.  To defeat a finding of laches, the agency . . . must then (1) show that the delay involved in the case . . . was excusable, and (2) rebut the presumption that such delay resulted in prejudice to the opposing party.  [Citations.].' " (*Fountain Valley Regional Hospital & Medical Center v. Bonta* (1999) 75 Cal.App.4th 316, 324, fn. omitted (*Fountain Valley*).)

We start, then, with determining the analogous statute of limitations.

B. *Code of Civil Procedure section 388 is the analogous statute of limitation*

Part 2 of Title 2 of the Code of Civil Procedure, entitled, "Of the Time of Commencing Civil Actions," provides a set of potentially analogous statutes of limitations for consideration.

The trial court found the analogous statute of limitations for laches was the three-year period in Code of Civil Procedure section 338, subdivision (a), which establishes a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."  Stronghold counters that the analogous statute of limitations for the laches defense is Code of Civil Procedure section 340, subdivision (a), which establishes a one-year statute of limitations for an action for a penalty.

Thus the question becomes whether the judgment against Stronghold constitutes a penalty.  In *The TJX Companies, Inc. v. Superior Court* (2008) 163 Cal.App.4th 80 (*TJX Companies*), the court considered which of the two statutes at issue here applied in an action on an alleged violation of the Song-Beverly Credit Card Act of 1971 (Civ. Code, §1747).  The court explained that the determining factor is whether the penalty is mandatory or discretionary.  Code of Civil Procedure, section 340 subdivision (a) applies if the penalty is mandatory; and Code of Civil Procedure section 338 subdivision (a) applies if

15

the penalty is discretionary. (*TJX Companies,* at p. 85.) The statute in *TJX Companies* provided that "[v]iolators '*shall be subject to a civil penalty*'" (*id.* at p. 86), and therefore the court concluded that Code of Civil Procedure section 340 subdivision (a) applied because the penalty was mandatory, even though the amount of the penalty remained in the discretion of the awarding authority. The *TJX Companies* court distinguished as permissive those statutes in which the awarding authority had the discretion to decide whether to impose a penalty at all, such as Civil Code section 1790, which contains the permissive language, "the judgment *may include* . . . a civil penalty . . . ." (See *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 132, fn. 8.)

Here, the City asserted a statutory claim against Stronghold for violation of section 4107. After the Board found that Stronghold violated section 4107, it then assessed the award against Stronghold pursuant to section 4110, which states: "A prime contractor violating any of the provisions of this chapter violates his or her contract and *the awarding authority may exercise the option, in its own discretion*, of (1) canceling his or her contract or (2) assessing the prime contractor a penalty in an amount of not more than 10 percent of the amount of the subcontract involved . . . ." (Italics added.)

Whether a penalty under section 4110 is permissive or mandatory presents a question of statutory interpretation which we review de novo. (*Ventura County Deputy Sheriffs' Assnn. v. County of Ventura* (2021) 61 Cal.App.5th 585, 590.) We begin our analysis with the " ' "actual words of [section 4110]," "giving them a plain and commonsense meaning . . . ." ' " (*Mikkelsen v. Hansen* (2019) 31 Cal.App.5th 170, 178.) The above italicized

16

language in section 4110 shows that the imposition of *any* penalty under this section is permissive, not mandatory.

Our plain reading of section 4110 is supported by an opinion from the California Attorney General. The Attorney General was asked whether a public entity could accept a construction bid that violated section 4104. (86 Ops.Cal.Atty.Gen. 90 (2003).) In reaching the conclusion the public entity had the discretion to accept the bid, the Attorney General stated: "The terms of section 4110 are permissive. The awarding authority is not required to cancel the contract or impose a penalty but 'may' do so in the exercise of 'its own discretion.'" (*Id.* at p. 8.)[8] The Attorney General also examined the legislative history of section 4110 and concluded this history supported the "'plain meaning' of the statute." (*Id.* at p. 9.)

Accordingly, because section 4110 permits but does not mandate the assessment of a penalty, we conclude that the claim here is "[a]n action upon a liability created by statute, other than a penalty or forfeiture" making the analogous statute of limitations the three-year period set forth in Code of Civil Procedure section 338, subdivision (a). (See *TJX Companies, supra*, 163 Cal.App.4th at pp. 84–85.)

Turning then to the issue of delay, delay is "measured by the period 'from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense.'" (*Magic Kitchen, supra*,

_____

8      "Although we are not bound by the Attorney General's interpretation of a statute, ' " '[a]bsent controlling authority, [the Attorney General's opinion] is persuasive because we presume that the Legislature was cognizant of the Attorney General's construction of [the statute] and would have taken corrective action if it disagreed with that construction.' " ' " (*Towner v. County of Ventura* (2021) 63 Cal.App.5th 761, 773.)

17

153 Cal.App.4th at p. 1157.) Here, the action against Stronghold was initiated by the City's notification letter in September 2020. The issue for us is when the City knew or should have known of the substitutions, so that we can determine whether that date occurred more than three years before September 2020.

The Board concluded the City's claims were not time-barred because evidence of the Act violations did not come to light until discovery in the parties' litigation related to the Project in 2019. Stronghold contends that the City knew or should have known of the violations well before that time.

Because the facts regarding the City's knowledge are different as to each of the two subcontractors, we separately address each subcontractor substitution below.

1. *The Concrete Subcontractor Substitution Claim is Timely*

Stronghold contends the City knew Perry was "West Coast Concrete" no later than June 2016. Thus, it argues that even if the three-year limitation period applied, the City's claims would be untimely because penalty claims were asserted more than three years after the substitutions and are not subject to tolling or the discovery rule. Specifically, Stronghold first argues the claim accrued when the substitution was made (i.e. when Stronghold contracted with Perry), in December 2015, not when the City discovered it. Stronghold cites no authority to support its contention that the City's cause of action accrued when Stronghold made the substitution and we reject it. (*In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 561 ["When a party provides a brief without argument or citation of authority, we may 'treat the points as waived, or meritless, and pass them without further consideration.' "].)

18

Stronghold further argues that the City's claim was not subject to tolling or the discovery rule, relying upon *Eisenberg Village etc. v. Suffolk Const. Co., Inc.* (2020) 53 Cal.App.5th 1201 (*Eisenberg*).[9] In *Eisenberg*, the appellate court held that disgorgement claims against unlicensed contractors were a penalty that must be made within one year of completion of the work under Code of Civil Procedure section 340, subdivision (a). (*Eisenberg*, at pp. 1212, 1214–1215.) *Eisenberg* is inapposite because it did not address the equitable doctrine of laches. Rather, the delay element of the laches defense is "measured by the period 'from when the plaintiff knew (or should have known) of the [wrongful] conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense.' [Citation.]" (*Magic Kitchen, supra*, 153 Cal.App.4th at p. 1157.)

Stronghold next argues the City should have known of the substitution when Stronghold signed its subcontract with Perry in December 2015. We reject this assertion for two reasons. First, Stronghold had a statutory duty to give notice of substitutions. (§ 4107, subd. (a).) The City had no legal obligation to monitor construction for improper substitutions.

Second, there is nothing in the record to indicate that the City would have been on notice that Stronghold had subcontracted with Perry (license No. 857992), instead of West Coast Concrete (license No. 811853), which was the entity named in its bid. Communications from Stronghold and

---

9 The common law discovery rule postpones accrual until a plaintiff discovers or has reason to discover the cause of action. (*Samuels v. Mix* (1999) 22 Cal.4th 1, 9.) In contrast, the equitable tolling doctrine "allows our courts, 'in carefully considered situations' [citation], to exercise their inherent equitable powers to 'soften the harsh impact of technical rules' [citation] by tolling statutes of limitations." (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724.)

19

construction documents referred to the concrete subcontractor as West Coast Concrete. Moreover, as the trial court noted, Stronghold used the names West Coast Concrete and West Coast Construction interchangeably. In fact, Stronghold's position on appeal is that West Coast Concrete and Perry are the same entity, an argument we reject. (*Post*, pt. III.) Stronghold does not explain how the City could have determined that West Coast Concrete and Perry were different entities when Stronghold itself continues to assert they are not different entities. The evidence further fails to show that the City ever acquiesced to the use of Perry instead of West Coast Concrete.

In sum, the evidence does not show that the City knew or should have known that Stronghold had substituted in Perry at any time before it learned of the substitution in 2019, well within the three-year statute of limitations. Stronghold cannot establish prejudice, and there is no showing of delay or inexcusable delay. (See *Fountain Valley, supra*, 75 Cal.App.4th at p. 324.) Accordingly, the City's claim as to the concrete subcontractor substitution is not barred by laches.

2. *The Waterproofing Subcontractor Substitution Claim is Untimely*

We adopt the relevant legal analysis from the preceding section in considering Stronghold's substitution of F.D. Thomas for Rinaldi.

As to whether there was a delay causing prejudice, the evidence indicates that the City should have known of the substitution as early as June 28, 2016, when Ausonio, Inc. (Ausonio), the City's construction manager, wrote to Stronghold asking for a current subcontractor list. That same day, Stronghold provided the list, which showed F.D. Thomas as the waterproofing subcontractor. In August 2016, Ausonio requested a proposal for the design-build of a system to seal underground concrete ductwork to prevent water intrusion. F.D. Thomas quoted that work on September 1,

20

2016, and Stronghold passed along the quote to the City a few weeks later. The City later negotiated directly with F.D. Thomas regarding the scope and price of the work.

Although the City asserts Stronghold concealed its substitution of F.D. Thomas for Rinaldi, the only evidence it cites to support this contention is a construction record dated February 2017 from Stronghold listing Rinaldi as a "finisher" and "[s]etter." This document does not list Rinaldi as working on waterproofing. Instead, the same document shows F.D. Thomas as doing the waterproofing. The City's concealment claim lacks merit and we reject it. If anything, the construction record establishes that the very latest date that the City should have known of the substitution was February 2017, when Stronghold listed F.D. Thomas as the waterproofing subcontractor.

Whether the City "knew or should have known" of the substitution in June of 2016, when Stronghold told Ausonio that F.D. Thomas was the waterproofing subcontractor, or in February 2017, when the construction record listed F. D. Thomas as the waterproofing contractor, it is clear that over three years passed before the City notified Stronghold of the violation in September 2020. Thus, a presumption arises that a prejudicial delay occurred as to the F.D. Thomas substitution. (*Magic Kitchen, supra*, 153 Cal.App.4th at p. 1157; *Fountain Valley, supra*, 75 Cal.App.4th at pp. 323–324.)

The City cites no evidence to rebut this presumption. Nor did the City present any legally sufficient justification for their delay. Accordingly, even viewing all factual matters most favorably to the City, Stronghold's " ' "uncontradicted and unimpeached" ' " evidence compels a finding in its favor as a matter of law. (*Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 164.)

21

In sum, on this record the City's delay in pursuing its claim as to the substitution of the waterproofing subcontractor was unreasonable and prejudiced Stronghold. Accordingly, the superior court abused its discretion in refusing to find that laches barred this claim. (*Craig v. City of Poway* (1994) 28 Cal.App.4th 319, 343.) We remand the matter to the trial court to grant the administrative writ in part and set aside the $50,000 penalty assessment imposed as to the substitution of the waterproofing subcontractor.

### III. *SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT STRONGHOLD VIOLATED THE ACT AS TO THE CONCRETE SUBCONTRACTOR*[10]

Stronghold's bid listed West Coast Concrete as the concrete subcontractor. Stronghold instead contracted with Perry for the concrete work. The Board found this substitution constituted a violation of the Act. The trial court concluded that substantial evidence supported the Board's findings.

We address the relevant Act requirements and analyze whether substantial evidence supported the Board's conclusions. (*JMS Air Conditioning & Appliance Service, Inc. v. Santa Monica Community College Dist.* (2018) 30 Cal.App.5th 945, 967 (*JMS*) ["we review 'the agency's decision, rather than the trial court's decision" under the substantial evidence standard"].) We stand in the shoes of the trial court and apply the same standard of review. (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 455–456.) In applying this deferential review we presume Board's findings are supported by the administrative record; it is the appellant's burden to show

---

10    Because we conclude that the action against the waterproofing subcontractor is barred by laches, we do not address Stronghold's further arguments regarding the waterproofing subcontractor.

that they are not. We do not reweigh the evidence but indulge in all presumptions and resolve all conflicts in favor of the Board's decision. (*Id.* at p. 456.)

A. *The Act*

"The Legislature enacted the [Act] . . . to prevent 'bid shopping' and 'bid peddling' after the award of a public contract and to give the awarding authority the opportunity to investigate and approve the initial subcontractors and any replacements." (*Titan Electric Corp. v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 188, 202, fn. omitted (*Titan Electric*).)[11] The Act requires that for public work, a prime contractor must specifically list in its bid the subcontractors it intends to use for the project. (§ 4104.) The general contractor is required to provide "[t]he name, the location of the place of business, the California contractor license number, and public works contractor registration number issued pursuant to Section 1725.5 of the Labor Code of each subcontractor who will perform work or labor or render service to the prime contractor . . . ." (*Id.*, subd. (a)(1).)

Once the awarding authority accepts a bid, the Act permits the prime contractor to substitute out a listed subcontractor only on nine enumerated conditions. (§ 4107, subd. (a).) Eight of these conditions relate to the unwillingness or inability of the listed subcontractor to perform the work. (*Id.*, subd. (a)(1)–(4), (6)–(9).) The remaining condition occurs when the prime contractor demonstrates to the awarding authority that the name of the subcontractor listed in the original bid was an inadvertent clerical error, but

---

[11] " 'Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling . . . is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job.' " (*Titan Electric*, *supra*, 160 Cal.App.4th at p. 202, fn. 6.)

this condition is "subject to the further provisions set forth in Section 4107.5." (*Id.*, subd. (a)(5).)

Section 4107.5 requires that a prime contractor's claim of inadvertent clerical error in the listing of the subcontractor be made "within two working days after the time of the prime bid opening by the awarding authority," with timely notice to both the listed subcontractor and the intended subcontractor. The Act further provides for a public hearing if the listed subcontractor timely objects. "The two-day written notice provision of section 4107.5 fosters [the legislative purpose of the Act] by forcing the prime contractor to assert its error in short order, and on the record, thus minimizing the time in which the contractor can shop for lower bids and limiting the room for deceptive maneuver." (*Cal–Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 668.)

Additionally, after accepting a bid the general contractor cannot "[p]ermit a subcontract to be voluntarily assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the original bid, without the consent of the awarding authority, or its duly authorized officer." (§ 4107, subd. (b).) The agency has the right to investigate the proposed substitution and reject it if unacceptable. (See *Titan Electric, supra,* 160 Cal.App.4th at page 202 [the Act gives "the awarding authority the opportunity to investigate and approve the initial subcontractors and any replacements"].) "These procedures require that a subcontractor receive written notice of a substitution request and, if the subcontractor timely objects, 'the awarding authority' must hold a hearing to decide if it will allow the substitution." (*JMS, supra,* 30 Cal.App.5th at p. 951.)

If a prime contractor violates the Act, it "violates [its] contract," and the awarding authority has discretion to either cancel the contract or assess a penalty of up to "10 percent of the amount of the subcontract involved." (§ 4110.)

B. *Additional Background*

Stronghold's bid listed West Coast Concrete, license number 811853, as the concrete subcontractor. License No. 811853 actually belongs to South Coast Concrete Construction dba South Coast Construction located in Riverside, California at 6770 Central Ave # B. On October 20, 2015, West Coast Construction, license No. 857992, submitted to Stronghold a written proposal for concrete work on the Project, and Stronghold accepted the proposal in December 2015. The Contractor's State License Board lists license No. 857992 as belonging to Perry "dba West Coast Construction" located in Riverside, California on 14457 Meridian Parkway. In sum, Stronghold's bid listed "West Coast Concrete," license No. 811853, but it entered into the subcontract for the concrete work on the Project with Perry "dba West Coast Construction," license No. 857992.

Perry has a "B-General Building Contractor" license, not the C-8 concrete contractor's license necessary for the Project. The City's public works director and city engineer testified at the Board hearing that a class "B" contractor can do driveways and sidewalks but not structural work. The fact Perry did not have a license to do structural concrete concerned him because the Project required "a lot of structural concrete" of good quality to withstand earthquakes. Based on the erroneous information contained in the bid submitted by Stronghold, he could not determine which company was responsible for the work or what type of license that company held. Further,

25

there is no evidence that Stronghold ever requested the City's consent to substitute Perry for West Coast Concrete.

C. *Analysis*

Stronghold argues the evidence shows it *intended* to contract with Perry, even though it failed to identify Perry by its correct name and wrote the wrong license number in its bid to the City.[12]  Stronghold argues the trial court erred in failing to interpret the contract and subcontract under the rules of contract interpretation to determine Stronghold's intent and the City's understanding.  We disagree.  The goal of contract interpretation is to ascertain the parties' mutual intent at the time of contracting.  (Civ. Code, § 1636.)  The mutual intent of the parties is determined by the words used in the agreement, which are to be understood in their ordinary and popular sense.  (*Id.*, § 1644.)  Mutual intention is determined by objective manifestations of the parties' intent including the surrounding circumstances under which the parties entered into the contract, the object, nature and subject matter of the contract, and the subsequent conduct of the parties.  (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.)

The trial court concluded that Stronghold's intent to contract with Perry is irrelevant.  We agree.  The relevant question is what Stronghold and the City intended at the time of contracting.  On this issue, the only evidence is the bid Stronghold submitted to the City naming West Coast Concrete as the concrete subcontractor and listing a license number belonging to South

---

[12]    If Stronghold's inclusion in its bid of West Coast Concrete and license number 811853 was made in error, Stronghold could have avoided the bid mistake if it had followed the edicts of section 4104 by providing not only the subcontractor's name and contractor license number but also the subcontractor's place of business (*id.* subd. (a)(1)) and then confirming that the information it listed in its bid aligned with the subcontractor it allegedly intended, i.e., Perry.

Coast Concrete Construction. The bid Stronghold submitted did not alert the City that Perry "dba West Coast Construction" would be the concrete subcontractor.

Moreover, section 4107.5 directs what a prime contractor must do when it makes an inadvertent clerical error in its original bid. Namely, within two working days after the City opened the bid, Stronghold was required to give written notice to the City, West Coast Concrete, South Coast Concrete Construction, and Perry that the West Coast Concrete name and the South Coast Concrete Construction license number were listed in error. West Coast Concrete and South Coast Concrete Construction then had six working days to submit a written objection to Stronghold and the City. The failure of a listed subcontractor to timely file an objection constitutes "primary evidence of his or her agreement that an inadvertent clerical error was made." (§ 4107.5.) Thereafter, a public hearing must be held before the awarding authority may consent to the substitution. (*Ibid.*)

Thus, if the inclusion of West Coast was a typographical error, Stronghold was required to comply with section 4107.5, so that the error could be promptly rectified. Stronghold did not do so.

Alternatively, if Stronghold wished to make a substitution from West Coast to Perry, it was first required to comply with section 4107, subdivision (b) and obtain the City's consent to the substitution. Stronghold did not do so.

In summary, we conclude substantial evidence supports the Board's finding that Stronghold unlawfully substituted its concrete subcontractor.

27

DISPOSITION

The judgment denying mandamus relief is affirmed in part and reversed and remanded in part as follows: On remand, the trial court is directed to issue a writ of administrative mandate compelling the Board to set aside the penalty assessment issued regarding the substitution of the waterproofing subcontractor. In all other respects, the judgment is affirmed. In the interests of justice, each side shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

KELETY, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

28